FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2020 MAR 25  AM H: 38

CLERK_____
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | INFORMATION NO. |
| ) | |
| v. ) | 18 U.S.C. § 1956(h) |
| ) | Conspiracy to Commit Money |
| GHALEB ALAUMARY ) | Laundering |

CR420-0027

THE UNITED STATES ATTORNEY CHARGES THAT:

INTRODUCTION

At all times relevant to this Information:

1. Ghaleb Alaumary was a dual citizen of the United States and Canada who resided in Canada.

2. Regions Bank and BBVA Compass Bank were financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation.

3. Builder A was a general contracting company providing construction services to the University, among other clients.

4. The "University" was a public undergraduate university in Canada.

COUNT ONE
*Conspiracy to Commit Money Laundering*
18 U.S.C. § 1956(h)

5. From in or about June 2017 and continuing through December 2017, within the Southern District of Georgia and elsewhere,

**GHALEB ALAUMARY,**

did knowingly combine, conspire, confederate and agree with others known and unknown to commit offenses against the United States, to wit, money laundering, in violation of Title 18, United States Code, Section 1956(h).

6. It was a part and an object of the conspiracy that Defendant, and others known and unknown, in an offense involving and affecting interstate commerce, knowing that the property involved in certain financial transactions, to wit, wire transfers and withdrawals from financial institution accounts, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, conspiracy to commit wire fraud and bank fraud, with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

7. It was a further part and an object of the conspiracy that Defendant, and others known and unknown, in an offense involving interstate commerce, knowing that the property involved in certain financial transactions, to wit, wire transfers and monetary instruments, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, conspiracy to commit wire fraud and bank fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control, of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

8. It was a further part and an object of the conspiracy that Defendant, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer monetary instruments and funds to a place within the United States from or through a place outside the United States, and to the United States from or through a place outside the United States, knowing that the property involved in certain financial transactions, to wit, wire transfers, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, conspiracy to commit wire fraud and bank fraud, with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

9. It was a further part and an object of the conspiracy that Defendant, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer monetary instruments and funds to a place within the United States from or through a place outside the United States, and to the United States from or through a place outside the United States, knowing that the property involved in certain financial transactions, to wit, wire transfers, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, conspiracy to commit wire fraud and bank fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the

control, of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

<u>*The Manner and Means of the Conspiracy*</u>

10. It was a part of the conspiracy and among its manner and means that:

   a. Coconspirators would and did send fraudulent emails, disguised as a trusted business, to victims directing bill payments be sent to bank accounts controlled by coconspirators.

   b. Coconspirators operated a network of "money mules" and arranged for them to obtain bank accounts for use to launder stolen funds.

   c. Coconspirators would and did transfer fraudulently obtained funds into bank accounts controlled by other coconspirators.

   d. Coconspirators would and did transfer fraudulently obtained funds to conceal the source and ownership of the funds.

   e. Coconspirators would and did unlawfully obtain victims' financial account information and personally identifiable information ("PII") without their consent.

   f. Coconspirators would and did use victims' PII to create false identification that would be used by coconspirators to impersonate bank customers, create financial accounts in the victims' names to launder funds, conduct wire transfers from the victims' accounts, and unlawfully withdraw funds from victims' accounts.

g. Coconspirators would and did falsify records and correspondence to effectuate the transfer of proceeds of the conspiracy into bank accounts.

h. Coconspirators would and did use telephone calls, text messaging, email, and WhatsApp to communicate with each other about the conspiracy.

Overt Acts

11. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed:

a. On or about June 27, 2017, coconspirators sent to the University one or more fraudulent "phishing" emails from an email account designed to appear to have originated from Builder A (the "Spoofed Account"), which directed the University to send payments for services performed to a bank account at the National Bank of Canada ("NBC").

b. On or about July 27, 2017, coconspirators used the Spoofed Account to send one or more fraudulent emails directing the University to send the payments to a TD Bank account ending in 0181 ("TD Account") that was accessed, utilized, and controlled by **ALAUMARY**.

c. On or about August 5, 2017, **ALAUMARY** sent a WhatsApp message to a conspirator not named in the Information herein ("CC-1") in the United States soliciting business bank accounts in the United States in which to deposit stolen funds.

d. On or about August 11, 2017, coconspirators received a wire of approximately $1,936,729.60 CAD ("Wire 1") from the University into the TD

Account, which the University sent in response to the Spoofed Email and in the belief that it was paying Builder A for services performed.

  e. On or about August 12, 2017, **ALAUMARY** sent a WhatsApp message to CC-1 in the United States confirming that Wire 1 was deposited into the TD Account.

  f. On or about August 14, 2017, coconspirators wired $1,440,080.00 CAD, representing part of the proceeds of Wire 1, from the TD Account to an account ending in 4476 at the DBS Bank (Hong Kong) Limited ("DBS Bank").

  g. On or about August 14, 2017, **ALAUMARY** sent CC-1 a WhatsApp message stating, "Look how it's done," along with an image of the TD Account transaction history showing Wire 1 and the wire to DBS Bank.

  h. On or about August 17, 2017, coconspirators wired $389,280.00 CAD, representing part of the proceeds of Wire 1, from the TD Account to an account ending in 7913 at the Mashreq Bank in Dubai.

  i. On or about August 18, 2017, coconspirators received wires of approximately $22,308.06 CAD ("Wire 2") and $9,922,669.82 CAD ("Wire 3") from the University into the TD Account, which the University sent in response to the Spoofed Email and in the belief that it was paying Builder A for services performed.

  j. On or about August 18, 2017, **ALAUMARY** sent a WhatsApp message to CC-1 in the United States instructing CC-1 to alert "all ur bankers who opened ur bank acc that u got a 5m coming and they paying u in ach larg amount within 60 days."

k. On or about August 19, 2017, **ALAUMARY** sent a WhatsApp message to CC-1 stating, "Bro this is real deal," along with an image of the TD Account transaction history showing Wire 2 and Wire 3 into the TD Account.

l. On or about August 28, 2017, **ALAUMARY** sent DBS Bank a fraudulent letter purporting to be from bank managers at TD Bank in Canada seeking the release of blocked funds from the August 14 wire to DBS Bank in Hong Kong

m. In or about October 2017, **ALAUMARY** caused to be purchased an airline ticket for a coconspirator to travel from Florida to Texas, so that the coconspirator could impersonate wealthy bank customers in Texas.

n. In or about November 2017, **ALAUMARY** caused to be purchased an airline ticket for the coconspirator's travel from Florida to Texas and a hotel room in Dallas, Texas for the coconspirator, so that the coconspirator could impersonate wealthy bank customers in Texas.

o. On or about November 27, 2017, in Chatham County, within the Southern District of Georgia, Person 1 conducted a telephone call with CC-1 during which they discussed using unlawfully obtained confidential bank account information to conduct financial transactions in accounts held at BBVA Compass Bank and other financial institutions.

p. On or about December 1, 2017, **ALAUMARY** caused to be purchased an airline ticket for Person 1's travel from Florida to Texas, and a hotel room in Dallas, Texas for Person 1, so that Person 1 could impersonate wealthy bank

customers in Texas by means of false and fraudulent pretenses at financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation, including Regions Bank and BBVA Compass Bank.

  q. On or about December 1, 2017, **ALAUMARY** sent a WhatsApp message to CC-1 confirming that he had booked the coconspirator's hotel and flight reservations for travel to Dallas, Texas.

  r. On or about December 3, 2017, **ALAUMARY** conducted several telephone calls with Person 1 to ensure that Person 1 successfully traveled to Texas.

  s. On or about December 4, 2017, **ALAUMARY** conducted a telephone call with Person 1 during which they discussed unlawfully obtaining money from a victim's account held at the BBVA Compass Bank.

All in violation of Title 18, United States Code, Section 1956(h).

_____
Bobby L. Christine
United States Attorney

_____
Chris Howard
Assistant United States Attorney
*Lead Counsel

_____
Karl I. Knoche
Assistant United States Attorney
Chief, Criminal Division

_____
Mona Sedky
Senior Trial Attorney
Department of Justice
*Co-lead Counsel