IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CASE NO. 4:20-CR-027 |
| v. | ) |
| | ) |
| GHALEB ALAUMARY | ) |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR RECONSIDERATTION**

The United States opposes Defendant's Motion for Reconsideration (Doc. 29). Defendant's second bite at the apple to post a foreign property still does not comply with the Court's requirements for posting real property; it still does not justify deviating from the Court's standard practices; and, it still does not alleviate the Court's well-founded skepticism of its ability to exercise any claim upon the property if and when Defendant violates the conditions of his release. Accordingly, Defendant's Motion for Reconsideration is properly denied.

**I.   Procedural History**

On April 21, 2020, the Court ordered that Defendant could be released on bond subject to certain conditions, including $10,000,000 bond secured by a solvent surety (Defendant's father) and real property, namely the property described by defense counsel at the April 21 hearing. In response, on May 5, 2020, Defendant filed a Motion to Approve Property Bond or Request a Hearing. Doc. 22. In that motion, Defendant acknowledged that he failed to obtain and furnish several categories of documents required by this Court to approve real property as security for bail bond.

1

Doc. 22 at 2.  He nonetheless asked the Court to approve the real property.  *Id.* at 2–3.

In its response in opposition filed on May 7, 2020, the United States pointed to a general problem with posting Canadian property as security:  enforcing U.S. forfeiture interests on property located in Canada is unlikely—if not impossible, as recognized by other courts.  Doc. 27.  Then, the United States noted the serious question of whether Defendant's father was a solvent surety as required.  *Id.* at 2.  Turning to the specific property to be posted in Canada, the United States explained why the heavily mortgaged property that was already encumbered with private and public lienholders provided little security, particularly for a $10,000,000 bond.  Adding to the property's poor suitability for security was that Defendant failed to provide five categories of information required by the Court for the posting of real property as security:  (1) an appraisal; (2) promissory note and mortgage to the United States; (3) title insurance and statement that the U.S. has first mortgage; (4) certificate of title; and (5) lien holders' statement recognizing U.S. obligation.  *Id.* at 5–7.  Defendant filed no reply.

On May 13, 2020, the Court denied Defendant's Motion to Approve Property Bond.  Doc. 25.  The Court determined that it was "not willing to deviate from its standard practices for the posting of property bond in the manner Defendant requests."  *Id.* at 1.  In so doing, the Court expressed its concern "that it would not be able to make any claim to the property in question if Defendant failed to appear or otherwise violated his conditions of presentence release."  *Id.*  Nonetheless, the Court

noted that it would consider any additional security Defendant offered to secure his bond, including cash or other property. *Id.* at 2.

Defendant elected not take the Court up on its offer to consider alternative property as security. Instead, in the instant Motion for Reconsideration, Defendant provides an appraisal for the same property already rejected and claims that "satisfying the appraisal requirement should alleviate" the Court's concerns. Doc. 29 at 2–3.

## II.   <u>Legal Standard on a Motion for Reconsideration</u>

"Reconsideration of a previous order is an extraordinary remedy, to be employed sparingly." *Geyser v. Brown*, No. CV 119-081, 2020 WL 2067426, at *1 (S.D. Ga. Apr. 29, 2020); *United States v. Kelly*, No. 2:18-CR-22, 2019 WL 5328722, at *2 (S.D. Ga. Oct. 18, 2019). Though not specifically authorized by the Federal Rules of Criminal Procedure, courts have permitted parties to file such motions in criminal cases. *See Serrano v. United States*, 411 F. App'x 253, 255 (11th Cir. 2011) (citing *United States v. Phillips*, 597 F.3d 1190, 1199–1200 (11th Cir. 2010)). "In deciding such motions, courts rely on the standards applicable to a motion for reconsideration filed in a civil case pursuant to Rule 59." *United States v. Faller*, No. CR 119-078, 2020 WL 1502983, at *1 (S.D. Ga. Mar. 24, 2020) (citation omitted). Under that standard, to prevail, a movant must show "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or manifest injustice." *Id.*

Where, as here, a movant is proceeding under the theory of the availability of "new evidence," he must show that the evidence could not have been discovered with reasonable diligence in the first instance. *Maestrey v. Johnson*, No. 5:17-CV-68, 2019 WL 5535509, at *1 (M.D. Ga. Oct. 25, 2019); *see also Whitesell Corp. v. Electrolux Home Prod., Inc.*, No. CV 103-050, 2020 WL 549224, at *1 (S.D. Ga. Feb. 3, 2020) ("additional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration."); *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against affording a litigant "two bites at the apple"). Furthermore, "the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002).

### III. Defendant's "New Evidence" of the Canadian Property's Appraisal Does Not Warrant Reconsideration, Nor Is It of Such Convincing Nature to Justify Reversal

As an initial matter, the new appraisal evidence should have, with reasonable diligence, been provided to the Court in the first instance. Defendant's initial motion claimed that he was "unable to obtain a recent appraisal from a licensed property appraiser." Doc. 22 at 2. To support his inability to obtain an appraisal, Defendant provided an email from one appraiser who declined because "at the present moment we are short staffed . . . ." Doc. 27 at 4, Ex. 5. Yet, as the United States pointed out in its May 7 response, that explanation fell well short, since Canadian appraisers publicized their ability and willingness to continue to appraise properties,

4

notwithstanding COVID-19.  *See Id.* at 4, Exs. 6 & 7.  Defendant's instant Motion justified the United States' skepticism, as Defendant now provides an appraisal on the property—proving that it was indeed possible to obtain one with reasonable diligence—and omits any mention of why an appraisal could not have been obtained until now.  Since Defendant has not shown that the evidence could have been discovered with reasonable diligence by the time of his initial motion, the Court should decline to exercise the extraordinary remedy of reconsideration.

Moreover, even if the Court reconsiders its prior ruling based on the "new evidence," Defendant's reconsideration request fails on its merits for four reasons.

*First*, Defendant still has not complied with nearly half of the Court's requirements for posting real property, which are listed in the Court's Property Bond Information (effective June 1, 1983).  Of the nine categories of information the Court requires a defendant to produce when posting real property, Defendant has elected not to produce:

- "a promissory note secured by a mortgage on the real property in question executed by the record title holder(s).  The mortgage to the United States Government shall be validly recorded in the county where the real property is situated, and all filing fees and documentary stamps shall be paid by the defendant and be recorded thereon;"

- "a certificate of title insurance from a title insurance company issued by an underwriter licensed by the state in which the property is situated," and "from the insurance company a statement that it acknowledges that the United States of America is listed as a first mortgage in the event of any loss to the property;"

- "certificate of title by a duly licensed attorney;" and

5

- "a statement from each lienholder agreeing not to advance any further monies or not to expand or increase their Deed to Secure Debt until the obligation to the United States Government has been met and satisfied."

These requirements, in place for nearly four decades, serve important purposes. As the United States explained in its May 7 response, these requirements: cloud title to prevent the surety from conveying title until the final disposition of the criminal case; give notice to others of the United States' interest in the foreign property; ensure the United States' property interest is properly recorded; confirm the surety's title to the property and uncover liens and encumberances; and alert other lienholders of the United States' interest. Since Defendant has not provided the four items of information listed above, and because this Court already held that it "is not willing to deviate from its standard practices for the posting of property bond," Defendant's Motion for Reconsideration is properly denied.

*Second*, the appraisal does not alleviate the extraordinary, if not impossible, prospect of instituting a U.S. forfeiture order on a property located in a separate sovereign, owned by a resident of a foreign country, and subject to foreign lienholders. Defendant's Motion to Reconsider does not explain how the government could forfeit the property if needed, even though courts have held that the government is unable to do so. *See* Doc. 27 at 1–2. Instead, Defendant concludes, "satisfying the appraisal requirement should alleviate this concern." Doc. 29 at 1–2. But how? Unless and until Defendant complies with the Court's documentary requirements to approve real property as security for a bail bond and provides an illustrative instance in which the United States has successfully forfeited Canadian property in an analogous situation,

6

the United States disagrees that the appraisal is a balm for the property's numerous other deficiencies.

*Third*, the appraisal does nothing to alleviate whether the surety is financially qualified, particularly given the surety's financial issues highlighted in the United States' May 7 Response. *See* Doc. 27 at 2–3, Exs. 2 & 3.

*Fourth*, the appraisal does not rebut the United States' claim that the property serves as poor security for a $10 million dollar bond. Defendant calculates the property has "a net equity of $752,836." Doc. 29 at 1. Yet, this amount—which Defendant elects not to point out appears to be in Canadian currency—equates to only $553,677 USD, or approximately 5% of the $10 million dollar bond. Even if the United States could make a claim to this amount, which appears unlikely, the amount is still insufficient to dissuade Defendant from fleeing to the country where his entire family resides.

Thus, since the property offered as security does not comply with the Court's requirements for posting real property, does not justify deviating from the Court's standard practices, and does not alleviate the Court's well-founded skepticism of its ability to exercise any claim upon the property if and when Defendant violates the conditions of his release, the United States requests that the Court deny Defendant's Motion for Reconsideration.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*/s/ Chris Howard*
Assistant United States Attorney
N.Y. Bar Number 4935938

Post Office Box 8970
Savannah, Georgia 31412
Telephone Number: 912-652-4422

**CERTIFICATE OF SERVICE**

This is to certify that I have served on counsel for Defendant via email a copy of the United States' Response in Opposition to Defendant's Motion for Reconsideration.

This 16th day of June 2020.

*/s/ Chris Howard*

_____
Chris Howard
Assistant United States Attorney
New York Bar Number 4935938

P.O. Box 8970
Savannah, GA 31412
(912) 652-4422