**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO:   4:20-CR-027 |
| | ) | |
| GHALEB ALAUMARY | ) | |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S REQUEST FOR COURT INTERPRETATION OF PROTECTIVE ORDER

The United States opposes Defendant Ghaleb Alaumary's motion (Doc. 49), couched as a "Request for Court Interpretation," that would result in giving him unfettered, unmonitored, and unrestricted access to his seized cellphone's contents in jail. This Court already found good cause for a Protective Order governing discovery produced to Alaumary, and nothing in the instant request unsettles that finding.

Alaumary's request is particularly inappropriate given the charges in this case and in 4:19-CR-67: allegations that he conspired to commit bank fraud and to launder money obtained from bank and wire fraud; allegations that he and his criminal confederates used and transferred victims' financial and identifying information to perpetrate their frauds. The request is particularly inappropriate given that he has pled guilty in this case. And, it is particularly inappropriate because the contents of his seized iPhone—to which he now seeks unmonitored access—bear out his fraudulent conduct, as the phone contains a voluminous amount of sensitive personal identifying and financial account information of third parties. Since good cause continues to justify preventing Alaumary from having unsupervised access to his

1

iPhone in jail, and because he points to no compelling reason why the iPhone should be excluded from the Protective Order, his motion should be denied.

## I.   <u>Background</u>

In May 2019, a federal grand jury in Savannah charged Alaumary with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349.  4:19-CR-67, Doc. 4.  The Indictment alleged that Alaumary and his coconspirators used a telephone and messaging applications to unlawfully obtain, disseminate, and misuse victim's financial account information to perpetrate fraud.  *See id.* ¶¶ 7, 12–15.  An arrest warrant was issued.

On October 17, 2019, Alaumary was arrested in Atlanta and taken into custody.  When arrested, Alaumary had an Apple iPhone in his possession, which law enforcement seized incident to his arrest.  On October 21, 2019, U.S. Magistrate Judge Benjamin Cheesbro signed a warrant authorizing a forensic examination of the iPhone.  Due to his risk of flight, Alaumary was ordered detained following his October arrest; he has remained jailed since.

Before the government made its initial discovery production in this case, it moved, without opposition, for a discovery protective order, citing, *inter alia*, its concern of the disclosure of sensitive personally identifiable information ("PII").  Doc. 41.  On January 16, 2020, the Court found good cause for the entry of a protective order.  Doc. 42.  In particular, the Court ordered that, "for any discovery provided in this case, such materials must . . . not be possessed by Defendant, except in the presence of the Defendant's counsel[.]"  4:19-CR-67, Doc. 42.

2

On February 11, 2020, the United States produced a digital copy of the iPhone's contents to Alaumary's counsel in discovery.  The iPhone's contents comprise more than 10 gigabytes of data, and when converted to a PDF report, total 62,492 pages.

On March 25, 2020, the United States charged Alaumary in a one-count Information with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  4:20-CR-027, Doc. 3.  In particular, the Information alleged that Alaumary and coconspirators obtained victims' financial account information and PII, fraudulently used victims' information, used telephone calls and messaging applications in their frauds, and stole millions of dollars.  *Id.*  Alaumary pled guilty on April 21, 2020.  4:20-CR-027, Doc. 18.  His final presentence investigation report ("PSR") has been filed, and he awaits sentencing, for which he faces up to twenty years' imprisonment.  4:20-CR-027, Doc. 49.

## II.  <u>Good Cause Continues to Justify Preventing Alaumary from Having Unsupervised Access to His iPhone in Jail.</u>

The Supreme Court has made clear that "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969).  Likewise, Federal Rule of Criminal Procedure 16 provides that courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  Fed. R. Crim. P. 16(d)(1).  The advisory committee notes to Rule 16 elaborate that courts should consider the economic harm to third parties when fashioning discovery protective orders.  *See id.* advisory committee's note (1974 amendment) ("Although the rule does

not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed.").

Here, in a case involving the unlawful receipt and distribution of third parties' PII and financial account information, the Court's Protective Order governing discovery struck a proper balance between protecting sensitive discovery with Alaumary's interest in preparing a defense. Rather than barring Alaumary from viewing or possessing discovery, it requires that when he does possess the discovery, he do so in the presence of his counsel. This arrangement drew no objection from defense counsel at the time the Protective Order was issued, proved to be sufficient for Alaumary to decide to plead guilty nearly six months ago, and has allowed defense to file any necessary objections to the PSR. Indeed, the reasons for limiting Alaumary's access to such sensitive information is even more compelling now than at the time of the Protective Order, since Alaumary's guilt is no longer in question.

Just as there is little question about Alaumary's guilt in this case, there should also be little question about the potential harm to third parties if Alaumary is granted unmonitored access to the iPhone. The iPhone contains a voluminous amount of third-party PII and financial account information that could cause economic harm to third parties in the unsupervised hands of Alaumary or a fellow inmate. The phone's contents reflect that Alaumary sent and received messages with other conspirators in which they transferred not only bank account numbers, home addresses, telephone numbers, dates of birth, and email addresses of third parties in the United States

and abroad, but they also exchanged answers to account-access questions, such as: "What High School did my mother attend?" and "Last name of my childhood best friend?" and "What was my first pet's name?"

In addition, the phone contains numerous photographs of individuals' passports and driver's licenses, of IRS identification numbers, and of financial cards in other individuals' names. In essence, the iPhone provides everything a fraudster would need to open accounts in others' names and access accounts that are already open. Such information could be misused not only by Alaumary, but by the hundreds of other inmates in the facility where he is held. The United States strongly opposes injecting such information into a jail facility and into Alaumary's unsupervised hands.

## III. Alaumary's Efforts to Exclude His iPhone from the Protective Order Are Unsound and Unsupported.

More than eight months after the Protective Order was entered without any objection and nearly seven months after the iPhone was produced to defense counsel, Alaumary now asks that his iPhone be excluded from the Protective Order's coverage. Doc. 49. He does not dispute that the phone was "seized from [him] incident to his arrest," does not challenge Judge Cheesbro's probable cause finding that authorized the phone's search, nor does he dispute that the phone was among the material "disclosed in discovery" by the United States. Doc. 49 at 1.

Instead, he contends that if he were not in jail (which he is), then he could access certain discovery like the iPhone "via the cloud," so therefore the Protective Order should not apply to such material because "the only thing preventing [him]

from accessing the contents of his IPhone is his custodial status." Doc. 49 at 2. This theory is unpersuasive for several reasons.

First, the undersigned is uncertain if the more than 10 gigabytes of data on the iPhone are accessible on whatever "cloud" to which Alaumary is referring. But equally problematic is that adopting his view of what constitutes "material" under the Protective Order would require the Court to review all sorts of electronic evidence in this case to determine if it is otherwise electronically available to Alaumary in some cloud. Nothing in the Protective Order envisions such an inquiry.

But even if the entirety of his iPhone were on the cloud awaiting his review, the hypothetical does not matter because Alaumary is in jail and unable to access the cloud. He has been in jail since his arrest, and his custodial situation does not appear to change any time soon. While Judge Baker set terms of a possible bond in April 2020, Alaumary has been unable to meet them, *see* Doc. Nos. 22, 25, 34, 35, and he next faces up to twenty years of imprisonment at sentencing. So, the hypothetical raised of "[i]f Mr. Alaumary was not in custody" is not applicable or pertinent.[1]

Next, it is factually untrue that, as Alaumary contends, "the only thing preventing [him] from accessing the contents of his IPhone is his custodial status." Doc. 49 at 2. Alaumary is free to access his iPhone's contents in custody, just as he has been free to access its contents since it was produced to his counsel nearly seven months ago. The Protective Order does not bar Alaumary from accessing the phone's

_____

[1] If true that he could freely access the entirety of his phone if released, and all of the PII and financial account information contained therein, then that would be a further reason for his continued detention.

6

contents; it merely requires that he possess discovery in the presence of his counsel. This requirement is less onerous to Alaumary than most defendants because Alaumary retained two defense counsel to represent him, thus doubling the availability of counsel's time in the past months to sit and review the discovery, including his iPhone, with him.

In sum, Alaumary provides no good cause to amend the Protective Order, no sound reason to interpret the Protective Order in the manner he asks the Court to do, and no rational reason for allowing him (and any other inmate he shares it with) unfettered access to voluminous third party PII and financial account information contained in his iPhone.  Consequently, his "Request for Court Interpretation of Protective Order" should be denied.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*/s/ Chris Howard*

Chris Howard
Assistant United States Attorney
N.Y. Bar Number 4935938

Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 201-2594
Facsimile: (912) 652-4388