1

```
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF GEORGIA
 2                        SAVANNAH DIVISION

 3   UNITED STATES OF AMERICA,    )
                                  )
 4          Plaintiff,            )
                                  )
 5      vs.                       )      CASE NO. 4:20-CR-141
                                  )      CASE NO. 4:20-CR-27
 6   GHALEB ALAUMARY,             )
                                  )
 7          Defendant.            )
     ---------------------------
 8

 9

10

11

12

13               TRANSCRIPT OF SENTENCING HEARING
             BEFORE THE HONORABLE R. STAN BAKER
14                 United States Courthouse
                         Savannah, GA
15                    September 8, 2021

16

17

18

19

20

21   COURT REPORTER:    Kelly A. McKee, CCR, RMR, CCP, RDR
                        United States Court Reporter
22                      P. O. Box 8552
                        Savannah, GA  31412
23                      912-650-4065

24

         (Proceedings reported by mechanical stenography, transcript
25   produced by computer-aided transcription.)
```

2

1                    APPEARANCES OF COUNSEL

2    FOR THE UNITED STATES OF AMERICA:

3        CHRISTOPHER HOWARD, Esq.
         U.S. ATTORNEY'S OFFICE
4        22 Barnard Street, Suite 300
         P.O. Box 8970
5        Savannah, GA  31412
         912-652-4422
6        Email:  christopher.howard@usdoj.gov

7    FOR THE DEFENDANT:

8        STEVEN M. FREY, Esq.
         Frey Law Firm
9        21 Lee Street
         Jonesboro, GA 30236
10       770-471-0599
         Fax: 770-471-1206
11       Email: Thefreylawfirm@gmail.com

12       STEVEN P. BERNE, Esq.
         McKenney & Froelich
13       One MidTown Plaza
         1360 W. Peachtree St.
14       Suite 910
         Atlanta, GA 30309
15       404-881-5335
         Fax: 404-881-8040
16       Email: Atlantalaw@bellsouth.net

17

18

19

20

21

22

23

24

25

3

1                        **P R O C E E D I N G S**

2                          **(3:32 p.m.)**

3              THE COURT:  Mrs. Hammock, please call our next case.

4              THE CLERK:  Yes, sir.  Case Numbers 4:20-CR-27 and

5     4:20-CR-141.  That's *United States of America vs. Ghaleb*

6     *Alaumary*.  We have Christopher Howard for the government and

7     Steven Frey and Steven Berne for the defendant.

8              THE COURT:  Thank you.

9              MR. HOWARD:  Government's ready to proceed, Your Honor.

10             THE COURT:  Thank you.

11             MR. FREY:  As are we, Your Honor.

12             THE COURT:  Thank you.  Counsel, if you will, make sure

13    the mask is above your nose.  Thank you.

14             MR. FREY:  Yes, sir.

15             THE COURT:  And let's all just keep our masks on.  It's

16    difficult that we have to continue with this in this time, but

17    we do.  It's the best way to keep everybody safe.

18             All right.  Well, Mr. Alaumary appeared before the Court

19    on April the 21st, 2020, accompanied by his attorneys, Steven

20    Berne and Steven Frey, for a Rule 11 proceeding as to Docket

21    Number CR 4:20-CR-27-1.

22             Pursuant to a plea agreement, he pled guilty and was

23    adjudged guilty of Count 1 of an information in 4:20-CR-27

24    charging him with conspiracy to commit money laundering, in

25    violation of 18 United States Code Section 1956(h).

4

1          Also, on February the 16th, 2021, he appeared before the

2   Court, accompanied by his counsel again, for a Rule 11

3   proceeding at that time in Case Number 4:20-CR-141-1.   Pursuant

4   to a plea agreement in that case, he pled guilty and was

5   adjudged guilty of Count 1 of an information charging him,

6   again, with conspiracy to commit money laundering, in violation

7   of 1956(h).

8          At the end of that change of plea proceeding and my

9   acceptance of his plea I directed the United States Probation

10  Office to conduct a presentence investigation in this case and

11  to prepare a presentence investigation report.

12         After a time period for objections to that report, the

13  defendant has now been -- well, I should state that I've got a

14  very thorough presentence investigation report in front of me

15  that's combined for both cases.   The parties have had some back

16  and forth about the presentence investigation report, and I now

17  have that presentence investigation report and their statements

18  to me about it.   So that's the first thing I wanted to bring up

19  is the presentence investigation report.

20         Let me just state this.   I know that there are some

21  individuals listening in on the public telephone line.   Because

22  of the COVID-19 pandemic, I have limited access to the

23  courtroom, and in order to afford the public the right to access

24  the hearing, I have opened up this public telephone line as a

25  lot of courts have done.   Let me just state, there is to be no

5

1   recording on that line whatsoever.  So if anybody is recording

2   on that line, cease that immediately and don't record at all.

3          There is to be no reproduction of anything, or no

4   further dissemination of anything that's on that line.  So

5   nobody can broadcast from the line.  Nobody can, you know,

6   record anything from that line and disseminate it letter.  There

7   shouldn't be any recording at all.  If anybody is recording on

8   that line, that would be a violation of the Court's order and

9   what I've already stated about the line.  So no one should be

10  recording anything on the line.  I can't be any more clear about

11  that.  Okay?

12         All right.  Now, let me get back to where I was about

13  this presentence investigation report.  I've got the very

14  thorough presentence investigation report in front of me.  I

15  read the objections, and then I've got a statement that it looks

16  like the parties have reached some agreement on these

17  objections, that after reviewing the evidence and the United

18  States Probation Office's response and confirmed with the United

19  States, it appears that the defendant's withdrawn the

20  objections, but there's been a joint statement, or joint

21  comments to the PSI, I should state, that the United States and

22  the defense have made that's filed at Doc. 69.

23         Let me just be certain that's where we are.  First, from

24  the United States' perspective, Mr. Howard, have you had a

25  chance to read and discuss the presentence investigation report

6

1    and any addendum thereto, and particularly in its final form,

2    this combined presentence investigation report?

3              MR. HOWARD:  Yes, Your Honor.

4              THE COURT:  Does the United States have any objections

5    to anything in the presentence investigation report?

6              MR. HOWARD:  No, Your Honor.

7              THE COURT:  All right.  Thank you.  From the defense

8    perspective -- who will be speaking for the defense?

9              MR. FREY:  I will, Your Honor.

10             THE COURT:  All right.  Thank you.  From the defense

11   perspective, are there any objections -- let me first ask this.

12   Have you had the chance to go over the presentence investigation

13   report and any addendum thereto with Mr. Alaumary?

14             MR. FREY:  I have.

15             THE COURT:  Do you have any objections to anything in

16   the presentence investigation report at all?

17             MR. FREY:  Only what's been mentioned, Your Honor, but I

18   believe it's covered in the joint resolution that is proposed by

19   both parties.

20             THE COURT:  So pursuant to Doc. 69 and this joint

21   statement, there are no remaining objections to the presentence

22   investigation report, but there are some statements, essentially

23   some conditions that the defendant places on his position

24   regarding the presentence investigation report.  Is that fair?

25             MR. FREY:  Yes, sir.

7

1          THE COURT:  Okay.  I've reviewed Doc. 69, and I'll take

2     it in consideration when determining the sentence.  Okay?

3          MR. FREY:  Yes, sir.

4          THE COURT:  Thank you.  There being no remaining

5     objections to the presentence investigation report, and the

6     Court having reviewed the presentence investigation report and

7     concurred with it, I hereby adopt the facts and the conclusions

8     of the presentence investigation report as those of the Court.

9          Therefore, I determine the applicable advisory

10    guidelines in this case are as follows:

11         The total offense level is 37.  The criminal history

12    category is I.  That results in a guideline range of 210 to 262

13    months of imprisonment, one to three years of supervised

14    release, a $40,000 to a $400,000 fine.  Restitution is due in

15    the amount of $30,703,946.56, and then there's a $200 special

16    assessment.  That will be $100 as to each count.

17         So that is the guideline range in the case.  As I said

18    at the Rule 11 hearing, as I always say, the guidelines are

19    merely advisory, and I can sentence the defendant above the

20    guidelines or below the guidelines based upon the specific facts

21    of the case, and I will certainly take that into consideration.

22    So I want to hear some argument from counsel.  But let me just

23    state, as to the presentence investigation report, I want to be

24    clear that I have reviewed it in its entirety, and I concur with

25    everything therein, and I've adopted the presentence

8

1    investigation report as the findings of the Court.  Okay?

2         Before we take up the issue of the Section 3553(a)

3    factors and take up the argument that counsel wants to offer to

4    me, I want to take up one matter off the record first.  So if we

5    could, we're going to mute the public telephone line.  We'll

6    seal the record, and everybody who's in the courtroom who's not

7    a direct participant of the hearing, I'll ask you to step out of

8    the courtroom at this time.

9                   (Sidebar discussion held)

10        THE COURT:  All right.  At this time I'll hear any

11   witnesses anybody wanted to present.  I don't know if we have

12   any witnesses.  I don't think we do.  But without any witnesses

13   or additional exhibits, I'll first hear from the United States

14   regarding any Section 3553(a) factors, then from the defendant's

15   attorney; and then, of course, I'll provide the defendant an

16   opportunity for allocution.

17        Any witnesses that either side intends to call during

18   this hearing at all?

19        MR. HOWARD:  None from the government.

20        MR. FREY:  No, Your Honor.  I have two family members

21   here.  We would have had more, but with the COVID restrictions.

22   But we're not calling them as witnesses.

23        THE COURT:  But I did, indeed, receive all the letters

24   that you provided in advance.  And that's, frankly, as you know,

25   Mr. Frey, more productive to be able to read the letters rather

1   than testimony ordinarily.

2        MR. FREY:  Thank you, sir.

3        THE COURT:  Thank you.

4        All right.  Mr. Howard, the floor is yours at the

5   lectern, please, sir.

6        MR. HOWARD:  Thank you, Your Honor.  Your Honor, Ghaleb

7   Alaumary acted as a pernicious thief who operated on a global

8   scale.  He's a money launderer who joined hands with some of the

9   world's worst cyber criminals to pick the pockets of financial

10  institutions, of businesses, of a university and of United

11  States citizens.

12       My fear is that in some ways the defendant represents a

13  harbinger of the types of economic crimes that this Court is

14  going to see and to deal with for the next decade and beyond.

15  Deterring him and deterring others is crucially important in a

16  case like this.

17       Certainly, when looking at the nature and circumstances

18  of the offenses, I think it's appropriate to consider what are

19  the two things that thieves care most about.  It's getting the

20  money and not getting caught.  Ghaleb Alaumary played a critical

21  and integral role in both of those.

22       Once the money left the victim, whether through theft or

23  through fraud, it was Ghaleb Alaumary who arranged the bank

24  accounts to receive it.  He arranged for the further laundering

25  of the money, either through moving it through other accounts,

1   through turning it into cash at compromised ATMs or laundering

2   it through crypto currency.  He ensured the thieves got their

3   money.  And by layering it, by laundering it, he made it harder

4   for law enforcement to trace it, to seize it and to recover it

5   and to return it to its rightful owner.

6        He was far from a bit player.  This is someone who

7   managed and supervised a team of at least 20 persons.  He

8   directed the activities of a team of runners in the United

9   States and Canada.  He directed co-conspirators to file

10  fictitious business documents.  He directed co-conspirators to

11  open bank accounts to receive stolen money.  And I think once

12  the Court views those crimes through that prism, showing how

13  integral he was, it also makes clear how culpable he was when

14  you look at the seriousness of his crimes.

15       And certainly when we talk about the seriousness of

16  economic crimes, we look at the numbers.  Here, the numbers are

17  astronomical.  You have a loss amount of nearly 58 million

18  dollars.  That's a conservative amount.  Look at Page 9 of the

19  information that he pled to makes clear that, quote, Alaumary

20  and his co-conspirators attempted to fraudulently obtain and

21  launder hundreds of millions of dollars.  Overt Act Number 14,

22  reflects Alaumary telling a co-conspirator that a bank account

23  in Mexico would be used to receive up to 100 million pounds from

24  the English Premier League Club and 200 million pounds from a

25  victim UK company.  These numbers reflect how serious of a

1     criminal actor he is.

2         These weren't just unsuccessful attempts.  His crimes

3     had a real impact on real people, some of which we can measure

4     in dollars and cents and some of which we can't.  He's caused

5     more than 30 million dollars in compensable loss to victims.

6     And we won't know whether or how much any of that will be

7     repaid.  I'd like to be able to stand here and say we will

8     ensure that every cent gets back to its rightful owner.

9     Certainly the United States will do everything it can, but you

10     have an individual whose financial condition is intentionally

11     opaque as he refused to provide financial disclosures to the

12     probation office.

13         When he's released ultimately from prison, presumably

14     he'll return to Canada where it'll make it even more difficult

15     to collect restitution.

16         But in addition to the monetary loss, this Court has

17     read the declarations and the victim impact statements.  They

18     talk about the reputational harm, in addition to the legal fees,

19     the time incurred by victims to remediate the harm.

20         I know the Court has read the letters where victims

21     describe, quote, the dramatic impact on the mental well-being of

22     staff that resulted from Ghaleb Alaumary's crimes; quote, the

23     incredible amount of time that was spent investigating the fraud

24     and mitigating the damage.  This is crimes that upended people's

25     lives.

1          And who is he committing these crimes with?  Hackers

2    working for the North Korean military, a high-profile Nigerian

3    fraudster who lived lavishly in Dubai, among others.  I'd ask

4    the Court to consider that when determining the nature and

5    seriousness of the offenses.

6          Your Honor, a significant sentence is appropriate here,

7    and it's appropriate considering the defendant's history.

8    Although he's a Criminal History Category I, that's a bit

9    misleading.  He has nine prior arrests in Canada.  He has five

10   prior convictions, primarily for fraud, and primarily resulting

11   in little more than probation.

12         So when the Court considers the need to deter Ghaleb

13   Alaumary from future criminal conduct, I'd ask the Court to

14   consider that even after all of those arrests, even after all of

15   those convictions, that didn't deter him from graduating into

16   the upper echelons of financial crime.

17         Nor is this someone who committed these crimes out of

18   some economic need.  Ghaleb Alaumary had opportunities that a

19   lot of people who stand before this Court for sentencing simply

20   don't have.  He comes from a loving two-parent household.  His

21   father provided him with stable employment.  According to his

22   father's letter, the defendant was an A student, and the PSR

23   recounts that he's fluent in multiple languages.  Despite these

24   advantages, despite these opportunities, we see paragraph after

25   paragraph of the PSR what he's done.

1          And his criminal conduct isn't aberrant.  It's not a

2     temporary lapse of judgment.  It spans months, and it spans

3     years.  So any notion that he has somehow changed his colors, I

4     think, should be viewed through his years of criminal conduct.

5          This is someone who was engaging in financial crimes as

6     his livelihood; and he would have kept on doing it, day after

7     day, month after month, if it wasn't for the men and women in

8     law enforcement, some of whom are sitting in this courtroom, who

9     spent their months, their years investigating and unwinding his

10    criminal activity.

11         There's a need to protect the public from Ghaleb

12    Alaumary's future crimes.  A significant and lengthy term of

13    imprisonment would do that.

14         Lastly, I'd ask the Court to consider that the

15    defendant's sentence will be heard outside of the confines of

16    this courtroom.  It will be heard on the campus of the

17    university in Canada, on the manicured lawn of a professional

18    football pitch in the United Kingdom and on the rocky shores of

19    Malta.  But it will also be heard for those who worked with

20    Ghaleb Alaumary and those who would follow his path down that

21    criminal road.

22         I'd ask the Court to impose a sentence long enough to

23    deter others.  The lure of easy riches for cyber criminals is

24    strong, but a significant sentence in this courtroom, on this

25    day, in this case will let the word go forth, that if you engage

14

1    in the type of conduct that Ghaleb Alaumary has done, you'll end

2    up facing years in a United States prison without the

3    possibility of parole.  Thank you, Your Honor.

4         THE COURT:  Thank you, Counsel.  Very thorough, and I

5    appreciate it.

6         Mr. Frey, I'll hear from you at this time at the

7    lectern.

8         MR. FREY:  The remarks by the government as to the

9    defendant's prior criminal history, the sentencing report

10   contains the information that was revealed at the age of 24,

11   several instances at 24, one that reached 25 and 26, and then a

12   last instance wherein the defendant was 31 years old.  I would

13   ask the Court to consider that although the Sentencing

14   Guidelines still categorize the defendant as a Category I.

15        Later in the defendant's life I believe that controlled

16   substances, as reflected in the PSR, became a -- a crutch in the

17   defendant's life, that they affected the defendant's judgment.

18   They affected the defendant's -- they affected the defendant's

19   actions.  The defendant understands the consequences of his

20   criminal conduct, and he's doing everything he can to forge a

21   new life.

22        The defendant has accepted his responsibility pursuant

23   to the Sentencing Guidelines.  The defendant has continued to

24   demonstrate an acceptance of his responsibility by not

25   committing any other crimes or otherwise violating his plea

1   agreement.

2        Several of the aggravating factors that the government

3   outlined in its closing remarks were factors and enhancements

4   that the defendant agreed to plead guilty to, or agreed would be

5   a part of his -- they would be sworn to as part of his criminal

6   plea.

7        While I do believe that cyber crime is a very serious

8   crime -- and I concur with my colleague that we may be just at

9   the precipice of it.  But my client is young.  My client has

10  accepted his responsibility.  He has manifested that acceptance

11  moving forward, and I would ask the Court to fashion a sentence

12  that reflects that, that reflects the deterrence that is

13  necessary in the Court's sentencing, but it also reflects the

14  sentence of Ghaleb Alaumary and not necessarily the sentence

15  painted with a broad stroke.

16       I have thought long and hard of what to ask this Court.

17  When I started practicing law, the guidelines were set in stone.

18  And then they were not, but, yet, they were.  They still were.

19  And so what I am faced with is the untenable position, untenable

20  position to ask this Court to impose a sentence that I believe

21  is reasonable, but that my colleague would not believe is

22  reasonable.

23       I have thought long and hard about this.  As I have

24  caucused with my client, I have agreed that a reasonable

25  sentence would be for him to go home, but I knew not to ask

1   that.  So I would ask this Court in its discretion to sentence

2   him to no more than 60 months' confinement.

3         He is also -- I would ask this Court in its discretion

4   to direct the Bureau of Prisons to place the defendant in the

5   Northeastern United States, specifically, New York or New

6   Jersey.

7         One more.  May I confer?

8         THE COURT:  Indeed.

9         MR. FREY:  And the PSR outlines that the defendant has

10  identified 14 years of his life wherein he consumed controlled

11  substances --

12        THE COURT:  That was going to be my question.  I take it

13  that you'd like for me to recommend the RDAP program.

14        MR. FREY:  I would like that.  I don't know, though, if

15  his deportation would affect that.

16        MR. BERNE:  He's not going to be eligible.

17        MR. FREY:  According to my colleague, he would not be

18  eligible.  I would just ask the Court to take that into

19  consideration in formulating a sentence.

20        THE COURT:  I can recommend it.  You know, the BOP is

21  changing the requirements for RDAP a good bit.  And they've

22  opened up some ability to get into RDAP, even if you don't get

23  the benefit towards your sentence off, that sometimes they've

24  opened it up as we've recognized the need for more individuals

25  to receive drug treatment.  So if there's not any objection from

1    the United States Attorney's Office, I'll recommend drug

2    treatment, and I think he needs it.

3              MR. HOWARD:  We'll defer to the Court, Your Honor.

4              THE COURT:  Okay.  All right.

5              All right.  Thank you, Counsel.  A very thorough job in

6    this case.  Again, as I've said earlier, I've read the

7    sentencing memorandum in advance of today's hearing.  I

8    appreciate all the points that you've made.

9              Mr. Alaumary, if you and Mr. Frey will come to the

10   lectern at this time.

11             Mr. Alaumary, as you know, the law provides that you

12   have the right to make a personal statement to me before I

13   determine your sentence.  You don't have to, but you can if you

14   want to.  Sir, is there any additional information that you'd

15   like to give me at this time, any statement that you'd like to

16   make at all at this time?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Go right ahead, sir.

19             THE DEFENDANT:  I would like to apologize to the United

20   States of America for everything that I committed, conspired and

21   attempted.  I made a decision to turn my life around, and I

22   started.  I learned a very valuable lesson.

23             THE COURT:  Hold on one second, sir.  I'm not hearing

24   you as well right now.  If it's all right with Mr. Frey, I'll

25   allow you to remove that mask for just the short time that

1   you're going to speak.

2         THE DEFENDANT:  I learned a very valuable lesson through

3   this journey, that time should be cherished and valued.  And I

4   already lost 22 months, going on 23, from my kids' life that I

5   won't be able to get back at all.  So -- so I learned the hard

6   way, that to say.

7         My mom raised me better than this.  Just what we talked

8   about before, if you could take into consideration, may you have

9   mercy on me; give me a chance to redeem myself to my family this

10  time.  And this is the first time and the last time you'll ever

11  see me in your court, Your Honor.

12        Thank you very much for your time, and I appreciate

13  that.

14        THE COURT:  All right, sir.  You may stay at the

15  lectern.  You can put your mask back on at this time.

16        So I've listened to you, and I've listened to all of

17  this information I have in the case.  I'm going to commend the

18  United States Probation Office for a very thorough presentence

19  investigation report in this case.  It's extensive.  There was a

20  lot to unpack there and a lot to uncover, and the United States

21  Probation Office did a great job of looking into it and then to

22  distilling it for the Court and for the parties.  It was a job

23  very well done.

24        I commend the attorneys in this case for giving me a lot

25  of information to consider; the investigating officers, the

19

1  defense counsel and the defendant himself, a lot of information

2  for me to consider.  I've considered all of that information

3  through the lens of those factors that I told you I would

4  consider at your change of plea hearing.  Those are the Section

5  3553(a) factors.  I've considered all of that information.

6       Of course, I've considered your guideline range, and

7  I've considered all of that information pursuant to all of the

8  relevant authorities as well.  I've read and reviewed all the

9  appropriate authorities in this case, statutory and otherwise.

10      Having considered all the information and all the

11 appropriate authorities, and pursuant to the Sentencing Reform

12 Act, it's the judgment of the Court that the defendant, Ghaleb

13 Alaumary, is hereby committed to the custody of the Bureau of

14 Prisons to be imprisoned for a term of 140 months as to each

15 count of conviction to be served concurrently.

16      It is recommended that you be given credit towards this

17 federal sentence for all the time that you've served in custody

18 since October 18th, 2019, that is not credited toward another

19 sentence.

20      I have varied and departed downward from the sentence

21 called for in this case because of the matters that we've

22 discussed during this hearing.

23      I do want to emphasize that the defendant played a key

24 role in various schemes to defraud numerous victims of a total

25 of approximately 58 million dollars.  The victims included

1    individuals, banks, other businesses, a law firm in the United

2    States, a university in Canada, and banks in India, Pakistan and

3    Malta.  The victims are still owed more than 30 million dollars

4    as a result of your criminal conduct and of your

5    co-conspirators' criminal conduct.

6          I note that you do have several prior fraud-related

7    convictions, and those did not factor into your guidelines

8    calculation.  So I had to consider those when determining the

9    sentence.  I didn't hold them against you to any great degree,

10   but I do want to consider the defendant's history and

11   characteristics.

12         Let me just state this about this case and about cyber

13   criminals in general.  You know, this case involves untold

14   victims.  I've just listed some of them.  The victim impact

15   statements I've received for sure.  You know, I'll order

16   restitution in a second to certain victims, but what we know

17   about financial crimes and about cyber fraud and cyber theft is

18   that we'll never truly know the impact, the devastation that

19   your actions caused.  You wreaked havoc, not just on faceless

20   financial institutions, not just on businesses with a name on

21   the sign, but on individuals who formed those businesses, who

22   work for those businesses, who looked to those financial

23   institutions to store and to protect their hard-earned rewards

24   of their own labors.  So the impact is great here.

25         Yes, it may be different than someone who walks into a

1    bank and points a gun at a teller's face, but in many ways I

2    think it's, frankly, more dangerous; it's more concerning, and

3    it requires even greater deterrence, because it is so difficult

4    to detect cyber criminal activity.  It's difficult to detect

5    these electronic financial fraud cases.  So because they're

6    difficult to detect, they're also difficult to deter.  And so

7    that in and of itself requires a significant sentence to be

8    certain that others don't go down the same path that Mr.

9    Alaumary went down.

10         Also, what we know about this type of activity is it

11   jeopardizes our nation's -- indeed, really our international

12   society's financial systems, and by doing that, this type of

13   activity affects every individual's financial security.

14         There are people and people's efforts, Mr. Alaumary,

15   behind every single one of those dollar signs.

16         That being said, I've also taken into consideration the

17   good in the case.  You take into consideration the good and the

18   bad, and the defendant has accepted responsibility in this case.

19   The defendant certainly is a family man, and I've taken into

20   consideration the letters that I've received on your behalf, and

21   I've thought about all of that in reaching a sentence that's

22   below the guideline range in the case.  Okay?

23         Now, at the end of the day I've determined that this

24   sentence is sufficient, but no greater than necessary to achieve

25   the statutory purposes of sentencing.  Any sentence below this

22

1    would just not be sufficient given the serious, serious nature

2    of your crimes.

3          Now, you do have to pay restitution.  It's due in the

4    amount of $30,703,946.56.  It's due and payable to the victims

5    as outlined in the presentence report.  However, the economic

6    circumstances of the defendant do not allow for payment of the

7    full amount of restitution ordered under any reasonable schedule

8    of payments now or in the foreseeable future.

9          Pursuant to Section 3664(f)(3)(B), nominal payments of

10   either quarterly installments of a minimum of $20 if working non

11   UNICOR, or a minimum of 50 percent of monthly earnings if

12   working UNICOR, shall be made.

13         Upon release from imprisonment and while on supervised

14   release, nominal payments of a minimum of $1,000 per month shall

15   be made, and payments must be made payable to the United States

16   District Court for disbursement to the victims.  I've determined

17   that the defendant does not have the ability to pay interest.

18   I'm not going to order you to pay interest, sir, and I'm not

19   going to order you to pay a fine.  I've determined that

20   considering the restitution amount, the defendant does not have

21   the ability to pay a fine.  I'm not going to order that.  You do

22   have to pay the total mandatory assessment amount of $200.

23   That's $100 as to each count of conviction.

24         Pursuant to the plea agreement as to the information in

25   4:20-CR-27, the defendant waives and abandons his interest in

1  any property that may have been seized in connection with the

2  instant offense, including, but not limited to, a gray Apple

3  iPhone.

4          Upon release from imprisonment, sir, you're going to be

5  on supervised release for three years as to each count of

6  conviction to be served concurrently.  While on supervised

7  release, you're going to comply with the standard conditions of

8  supervision and the mandatory conditions of supervision, and

9  you're also going to comply with any special conditions of

10  supervision.

11          As to the special conditions of supervision, you're

12  going to submit to substance abuse testing to determine if

13  you've used a prohibited substance while you're on supervised

14  release, and you're going to provide the United States Probation

15  Officer with access to any requested financial information and

16  authorize the release of any financial information and share

17  that financial information with the United States Attorney's

18  Office when requested.

19          You also must not incur new credit charges or open

20  additional lines of credit without approval of the probation

21  officer, and you shall not maintain more than one financial

22  institution account or be a signor on a financial institution

23  account without the prior approval of the probation officer.

24          Furthermore, you'll pay the financial penalty in

25  accordance with the schedule of payments sheet of the judgment.

1    And if you have any changes in economic circumstances that

2    affect your ability to pay the financial penalty, then you'll

3    notify the United States Probation Officer, who will notify the

4    Court.

5            You also will be subject to certain searches upon

6    certain conditions while you're on supervised release.

7            The United States Probation Office will provide you a

8    written statement that'll set forth the conditions of your

9    supervised release.

10           I've accepted the plea agreement in the case because I'm

11   satisfied the plea agreement adequately reflects the seriousness

12   of the actual offense behavior and that accepting the plea

13   agreement will not undermine the statutory purposes of

14   sentencing.

15           In accordance with the plea agreement, as to the

16   information in 4:20-CR-27, it's ordered that Count 1 -- in

17   accordance with the plea agreement in 4:20-CR-27, it's ordered

18   that Count 1 of the indictment in 4:19-CR-67 is dismissed as to

19   this defendant.  Okay.  I want to be sure I get my case numbers

20   correct.  It's the indictment in 4:19-CR-67 that's dismissed.

21           I will order that at the conclusion of the hearing he'll

22   be remanded to the custody of the United States Marshal.  I will

23   recommend to the Bureau of Prisons that he be housed in a

24   facility in the Northeastern United States, preferably New York

25   or New Jersey.  I'll further recommend to the Bureau of Prisons

1    that he be evaluated for any substance abuse treatment program

2    which he may be eligible, including, if he is eligible, the RDAP

3    program.  Okay?

4            Pursuant to your plea agreement, sir, with limited

5    exceptions, you've waived your right to appeal.  If you want to

6    file an appeal, you've gotta file an appeal within 14 days of

7    today's date.  Failure to appeal within 14 days will be a

8    further waiver of your right to appeal.  You're entitled to the

9    assistance of counsel in taking an appeal.  If you cannot afford

10   counsel, counsel can be appointed to represent you on appeal;

11   and if you so request, the Clerk of Court can prepare and file a

12   notice of appeal on your behalf.

13           Counsel, you've got our standard notice of post-

14   conviction obligation form most likely.  If you don't,

15   Mrs. Hammock can get it for you.  If you'll fill that out, have

16   him fill it out appropriately and then file it with the Court

17   in due course --

18           MR. FREY:  I shall do that.

19           THE COURT:  -- regarding his election.

20           Mr. Alaumary, you know, the sentence you've received

21   today is significant.  It's not nearly as significant as the

22   sentence that you could have received but for the dogged

23   advocacy of your counsel in this case and for the reasonableness

24   of the United States Attorney's Office.

25           You know, without them and the efforts that they've

1   made, I wouldn't know about the good in the case.  Right?  I'd

2   just know about the bad; and the bad, according to the

3   guidelines, would put a sentence well above the sentence that

4   you received today, well above it.  But because of the dogged

5   advocacy of your counsel and the reasonableness of the United

6   States Attorney's Office and of everything that we've heard

7   about during this hearing, you've received a sentence that's a

8   significant sentence, no doubt about it.  It's probably heftier

9   than the sentence that you were hoping you were going to get and

10  maybe even heftier than the sentence that you thought you were

11  going to get, but it's a sentence that you've earned, sir,

12  because of your conduct in the case.  It's a sentence that I

13  hope will deter you from doing anything like this ever, ever

14  again.  And, furthermore, I hope that it will deter others from

15  traveling down the same path.

16          You know, as I read the presentence investigation

17  report, I thought about all the tools that you had at your

18  disposal.  You know, obviously you're an intelligent person.

19  You obviously have a very sophisticated knowledge of financial

20  institutions.  You have a sophisticated knowledge of electronic

21  systems and how they work and how they operate.  You know

22  multiple languages.  You have a loving family, two members of

23  which are behind you today.  You have had a good education.  All

24  of these things going for you, and you choose to use all those

25  things for bad.  You did.  That's what you did.

1    My hope today is that there's a kid out there somewhere

2    who has those same talents and those same interests that you

3    have and that kid thinks about going down the road that you were

4    going down and says, nah, I'm not interested in spending a

5    decade of my life in federal prison without parole.  I'm not

6    going down that route.  That's not where I'm headed.  I'm going

7    to go use this for good.  I'm going to go work for the financial

8    institutions.  I'm not going to work against them.  I'm going to

9    go help people make money; I'm not going to steal their money.

10   I hope that's the decision that that kid makes.

11   You can't go back in time and make that decision

12   yourself.  I know that you wish that you could.  I know your

13   family wishes you could.  But what you can do is make good

14   decisions moving forward.  No doubt, you're going to pay your

15   debt to society, as we like to say, by spending time in prison.

16   No doubt about it.  But that shouldn't be the end of it for you.

17   When you get out of prison, you're still going to have a debt to

18   pay.  Okay?  And I'm not just talking about your restitution.

19   You should go find those kids that are in the same spot you

20   were, and you should use your story as a cautionary tale to tell

21   them, look, son, don't go down the road I went down.  Let me

22   tell you where that leads to.  It leads to ruin.  You think you

23   won't get caught?  Believe me, I'm a smart man and I got caught.

24   They'll find you.  Okay?

25   That's what you can do.  That's the benefit that you can

1    have.  Not just clearing your conscience, but doing good for

2    society in that way.

3           You know, we oftentimes hear terrible stories, and at

4    this point in time I'm sure that your story seems like a

5    terrible story.  Here's this person with all this going for them

6    and they chose to make terrible decisions, international crime

7    spree, and they're ending up in prison for a long time.  But

8    your story is not done yet.  You still are able to write the

9    final chapters of your story.  While you're in prison, start

10   making decisions that lead to a better story, and then when you

11   get out of prison, because, frankly, that'll be a good story to

12   tell one day, to your children, to your grandchildren, to,

13   again, people that you mentor:  Look, I was in a bad spot; I

14   went to prison for a long time, but I decided that I was going

15   to own up to my own decisions, I was going to be a man and say,

16   you know what, I'm here because of my own decisions and I'm

17   going to do the right thing moving forward.

18          That's the opportunity that you have ahead of you, sir,

19   and I hope -- I sincerely hope that you take advantage of it.

20   You've got some time to serve in prison, but believe me, you'll

21   be out before you know it, and then it's going to be up to you

22   to make the right decisions moving forward.  Okay?  I wish you

23   the best of luck in that regard, sir.

24          All right.  I've now pronounced my sentence.  Other than

25   any objections that have been previously stated for the record,

1  does the United States have any objections to my findings of

2  facts, my conclusions of law or to the manner in which I

3  pronounced the sentence?

4        MR. HOWARD:  No, Your Honor.

5        THE COURT:  Anything, Mr. Frey?  Any objections at all?

6  I think you may need to consult with co-counsel.

7               (Proceedings went off the record.)

8        MR. FREY:  None beyond what we've already stated.  But I

9  would ask that the defendant's mother and aunt have traveled

10  from Canada.  If he could spend five minutes before.  They have

11  not had any contact.

12       THE COURT:  I don't have a problem with that.  Because

13  of COVID, it's going to be difficult for them to get in the

14  jail, et cetera.  What I've done in situations like this

15  before -- and, Marshal, with the marshals in the room, if you

16  feel there's a security risk that doesn't allow it, that's fine,

17  but I'd like at the very least he can give her a hug.  Okay?

18  That will be the physical contact -- not at this time, ma'am.

19  Go ahead and have a seat.  And then I don't mind them spending

20  five minutes together in the room.  Obviously the marshals are

21  going to have to be in the room.  Okay?  So the marshals will be

22  in the room for five minutes or so and give you that time after

23  everybody else clears out of the room.  Okay?

24       MR. FREY:  Thank you, Your Honor.

25       THE COURT:  It's a reasonable request.  It's not a

30

1   problem.

2          MR. BERNE:  Thank you, Your Honor.

3          THE COURT:  Anything further from the United States

4   Probation Office?

5          USPO RAILLING:  No, Your Honor.

6          THE COURT:  Okay.  Ms. Hammock, anything further for the

7   day?

8          THE CLERK:  No, sir.

9          THE COURT:  All right.  Counsel, I commend you for your

10  efforts in this case.  It's a difficult case, but you've handled

11  it well.  We'll be adjourned.

12         And, sir, again, I wish you the best of luck.  I truly

13  do.  You know, you told me I won't see you again.  I hope that's

14  the case.  Okay?  I mean, no offense to you, but we don't want

15  to see you again.  We want you to go use all those skills you

16  have for good when you get out.  Okay?

17         All right.  We'll be adjourned.

18                (Proceedings concluded at 4:48 p.m.)

19                        -  -  -

20

21

22

23

24

25

31

1          CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Kelly A. McKee, Registered Diplomate Reporter,

4  Registered Merit Reporter and Certified Realtime Reporter, in

5  and for the United States District Court for the Southern

6  District of Georgia, do hereby certify that pursuant to Section

7  753, Title 28, United States Code, that the foregoing is a true

8  and correct transcript of the stenographically reported

9  proceedings held in the above-entitled matter and that the

10  transcript page format is in conformance with the regulations

11  of the Judicial Conference of the United States.

12

13          Dated this 24th day of January, 2022.

14

15

16          /s/ Kelly A. McKee

17          KELLY A. McKEE, CCR, RMR, CCP, RDR

18

19

20

21

22

23

24

25