## AFFIDAVIT IN SUPPORT OF MOTION FOR
## THE REDUCTION OF SENTENCE

This petitioner respectfully now presents to this Honorble Court, verifiable evidence of government overreaching, denial of equal protection of law and martime and territorial jurisdiction of the UNITED STATE's violations, as well as clear procedural and due-process violations, and ineffective assistance of counsel claims all directly associated with the investigation and prosecution of this case and matter.

Today, the petitioner presents arguments for faulty enhancements that the petitioner's counsel failed to address the Court on these implicable enhancements that total 9 points to the petitioner's sentencing guidelines. First, 2B1.1(b)(11)(c)i and 2B1.1(b)(11)(c)ii is not applicable to the petitioner. In the PSI, it clearly states that codefendants, Ohanaku and Desangles, provided and manufactured all of the false identifications that were provided to the confidential informant(CI). Therefore, the petitioner should not receive the two level enhancements.

The Government applied the wrong enhancement in the Georgia's indictment. It claimed that there were five or more participants, which resulted in a three level enhancement. 3B1.1)b) which is inapplicable, because there were only four defendants (Alaumary, Ohanaka, Desangles and Courson, the CI) in the indictment. The correct enhancement is 3B1.1(c), two levels instead of three.

2B1.1(b)(10)(A). This enhancement is inapplicable according to case (USA v. Morris,153 Fed.Appx.556), 11th Circuit, case binding, which states "Although the government presented evidence that defendant and the co-conspirators would go out of town to engage in credit card fraud, there was no evidence that any member tried to 'relocate' the scheme to another jurisdiction. The evidence implied an expansion of the conspiracy rather than a relocation."The CI had a round-trip ticket from Florida to Texas, which meant that the out-of-town trips were only temporary and that Mr. Courson alwyas returned to Florida.

In the petitioner's judgement, the government is asking a restitution of $5.5 million

to Bank Islami Pakistan Limited, $728,992 to VISA International Service Association and $6,091,299.26 to Bank of Valletta. The petitioner has attached evidence showing the prosecutor's wrongfully ordered and falsified restitution amounts of over $12,000,000.

All the preceeding amounts to a constructive denial of counsel which caused this defendant an unjust conviction for alleged criminal conduct, which was said to have occured on foreign lands and not in a district in which the Federal Government of the United States exercised exclusive legislation in all cases and violated the provision (not exceeding ten square miles) as stated in the UNITED STATES CONSTITUTION of Article 1 § 8c ()(17). The indictment alleges criminal acts committed entirely beyond the borders of the United States and the Government did not rely on any theory of territorial jurisdiction to support the petitioner's prosection for such offenses. "it is longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the the territorial jurisdiction of the United States "MORRISON, 130 S.CT. at 2822 (quoting EEOC V. ARABIAN AM. OIL CO. (ARAMCO)", 499 U.S. 244 248, 111 S. CT. 1227, 113L ed. 2d. 274 (1991) "(superceded by civil rights act of 1991, publ no. 102-166 105 lo5 stat 1071)" This principle represents a canon of construction or a presumption about a statutes meaning, rather than a limit upon Congress's power to legislate. It rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign matters. Therefore,, "unless there is the affirmative intention of Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions, ARAMCO,499 U.S. at 248 petitioner urges the Court to follow the modern principle exemplified by MORRISON and insist that the government point to a textual basis in the statutes to support the extraterritorial reach of TITLE 18 U.S.C. 1956 (H) 18 U.S.C. 1956 (a)(1), 18 U.S.C.1956 (a)(1)(A)(i), 18 U.S.C. (A)(1)(B)(i) and 18 U.S.C. 1956 (A)(2)(B)(i) that would allow the Government to present alleged evidence of criminal conduct which occured in the alleged countries of CANADA, PAKISTAN, INDIA, MALTA and the UNITED KINGDOM, to be legally and lawfully characterized as offenses under TITLE 18 U.S.C. on review from the case file of UNITED STATES v. BOWMAN, 260 U.S. 94,98,43 S.CT. 39, 67 L.ed 149 (1922) THE SUPREME COURT reasoned the necessary locus for a crime when not specifically defined depends upon the purpose of Congress as evidence as evidence by the description and nature of the crime and upon the territorial limitations upon the power and jurisdictiion of a government to punish crime under the law of nations, the SUPREME COURT goes further on

to state crimes against private indivduals of their property like assault, murder, burglary, larceny, robbery, arson, embezzlement and frauds of all kinds, which effect the peace and good order of the community, must of course be committed within the territorial jurisdiction of the Government where it may properly exercise it. If punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negate the purpose of Congress in the regard. The Merriam Webster Dictionary of Law defines over-reaching as conduct that exceeds established limits (as authority or due-process). The petitioner now presents extraordinary and compelling reasons which should, under the provisions of law, warrant a reduction of sentence, being that the petitioner's base offense level calculation whould not have included foreigh alleged criminal conduct which were not a crime against the UNITED STATES. Congress, while it has not remained entirely silent, has chosen to assign to foreign crimes a rather limited role; there are good reasons to avoid creating a new use for foreign crimes in sentencing; to do so would require distinguishing between activities that violate both domestic and foreign law and those which violate only one. The petitioner now states that without a clear mandate from Congress, this Court should have declined to create the complexities that the inclusion of foreign crimes in the base offense level calculation generated in this case. The petitioner contends that the district court erred in departing upward 22 levels on his base offense level for criminal conduct alleged to have occuredl in "CANADA, INDIA, MALTA and the UNITED KINGDOM and amounted $53,769,815.28 dollars of foreign conduct, leaving the government only $3,561,780.63 of domestic conduct to consider in determining this petitioner's base offense level. In the case of the UNITED STATES v. AZEEM, 946 F.2d 13-16, (2nd cir.1991), the Second Circuit held that the Egyptian Transaction should not have been included in the base offense level calcuation because it was not a crime against the United States. The consideration given in AZEEM with respect to the petitioner's base offense level should guide this Court when deciding the motion for a reduction in sentence in this case. The petitioner further states that after review, the foreign conduct considered to be relevant, he uncovered factual evidence that the Government misrepresented the actual money amounts alleged to have been suffered. Please review the BANKISLAMI official statement, which shows an alleged loss of R.S. 2-6 million whihc is the equivalent of $19,500 U.S. dollars. BANKISLAMI has confirmed that its total loss was only $19,500 and 6.5 million. Absent reliable information of uncharged foreign criminal conduct, the additional 22 points on the petitioner's base level should not have been levied; the Government could not prove any foreseeable loss that